UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

T<small>ERENCE</small> D<small>ESHAWN</small> G<small>RANT</small>,

    Plaintiff,    Case No. 1:21-cv-413

v.            Honorable Robert J. Jonker

U<small>NKNOWN</small> S<small>CHMIDT</small> et al.,

    Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim. The Court will also deny Plaintiff's pending motion.

**Discussion**

I.  **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Muskegon

County, Michigan.  The events about which he complains occurred at that facility.  Plaintiff sues MDOC Director Heidi Washington, LRF Warden Unknown Jackson, and LRF Corrections Officer Unknown Schmidt.

Plaintiff alleges that on September 18, 2020, Defendant Schmidt entered Plaintiff's cell outside his presence.  Plaintiff's cellmate allegedly later explained to Plaintiff that Defendant Schmidt entered the cell, asked which side of the cell belonged to whom, and then proceeded to search only Plaintiff's side.  The cellmate further reported to Plaintiff that Defendant Schmidt left with an unidentified item taken from Plaintiff's possessions.

Plaintiff allegedly sought out Defendant Schmidt and asked about the removal of his item.  Although Plaintiff fails to specify what the possession was, Defendant Schmidt allegedly responded that he had thrown it away because it was contraband.  Plaintiff alleges that Defendant Schmidt offered to dig the item out of the trash and to give Plaintiff a contraband removal form, but Plaintiff never received the form.

Plaintiff alleges that Defendant Schmidt violated his Fourth, Eighth, and Fourteenth Amendment rights, but he fails to specify the relief he seeks.

## II.    **Failure to state a claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

III.    **Respondeat Superior**

Plaintiff fails to make specific factual allegations against Defendants Washington and Jackson, other than his claims that they failed to properly train their employees. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v.*

*Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Washington and Jackson engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

IV.   **Fourth Amendment**

Plaintiff contends that Defendant Schmidt violated his Fourth Amendment rights by seizing his property without a valid penological interest. In *Hudson v. Palmer*, 468 U.S. 517 (1984), the Supreme Court considered and rejected a Fourth Amendment claim similar to Plaintiff's. In that case, a prison official searched a prisoner's cell and destroyed some of his legal papers in the process. *Id.* at 519, 535. The prisoner claimed that the prison official's conduct constituted an unreasonable search and seizure of his property, in violation of the Fourth Amendment. *Id.* at 530. The Court disagreed.

First, the Court recognized that while prisoners are not beyond the reach of the Constitution, "curtailment of certain rights is necessary, as a practical matter, to accommodate a 'myriad of institutional needs and objectives' of prison facilities, . . . chief among which is internal security." *Id.* at 524 (internal citation omitted). The Court then determined that the official's search of the prisoner's cell did not violate the Fourth Amendment because "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his

4

prison cell." *Id.* at 526.  According to the Court, "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Id.* at 527–28.

For similar reasons, the Court held that "the Fourth Amendment does not protect against seizures in a prison cell[.]" *Id.* at 528 n.8.  According to the Court, "[p]rison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests." *Id.*

Applying *Hudson* to Plaintiff's case, the Fourth Amendment did not prohibit Defendant Schmidt from searching his cell.  Moreover, it did not prevent Defendant Schmidt from confiscating an item in Plaintiff's cell because it may have appeared to be contraband.  Therefore, Plaintiff does not state a Fourth Amendment claim.

V.     **Eighth Amendment**

Plaintiff alleges that Defendant Schmidt's conduct was an affront to human decency and to his dignity in violation of the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure

5

while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.  "[R]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'"  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).  As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim."  *Id.*

Here, Plaintiff's deprivation falls far short of the type necessary to violate the Eighth Amendment.  *See Rhodes*, 452 U.S. at 348.  Although Plaintiff fails to identify what Defendant Schmidt allegedly took from him, none of Plaintiff's allegations suggest that the item was so essential to Plaintiff that its loss would deny him the basic requirements necessary for prison life.  *See id.* at 347.  Consequently, Plaintiff fails to state an Eighth Amendment claim against Defendant Schmidt.

VI.   **Fourteenth Amendment**

Plaintiff's final claim alleges that Defendant Schmidt removed the unidentified possession in violation of the Fourteenth Amendment's Due Process Clause.  Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).  Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy.  If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law."  *Parratt*, 451 U.S. at 537.  This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure.  *See Hudson*, 468 U.S. at 530–36 (1984).  Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies.  *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir.

1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MDOC Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state or any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's complaint will be dismissed.

VII. **Pending Motion**

Plaintiff also has a pending motion seeking leave to proceed *in forma pauperis*. (ECF No. 2.) The Court issued a deficiency order because Plaintiff had failed to provide a statement of his prison trust account and directed Plaintiff to either provide the account statement or pay the filing fee, otherwise the Court would dismiss his complaint. (ECF No. 3.) Plaintiff subsequently paid the filing fee. Thus, in light of Plaintiff's payment of the filing fee and the Court's subsequent dismissal of the complaint, the Court will deny Plaintiff's motion.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c).  The Court will also deny Plaintiff's pending motion to proceed *in forma pauperis*.  Should Plaintiff appeal this decision, the Court will assess him the $505.00 appellate filing fee.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An order and a judgment consistent with this opinion will be entered.


Dated:    June 16, 2021              /s/ Robert J. Jonker
                                                              ROBERT J. JONKER
                                                              CHIEF UNITED STATES DISTRICT JUDGE